IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Respondent, | § | |
| | § | CRIM No. 4:15-CR-44-3 |
| v. | § | CIV No. 4:19-CV-3617 |
| PEDRO HERRERA-ALVARADO; aka | § | |
| BETRON-ALVARDO; aka AVILES- | § | |
| REBOLLAR; aka GALICIA- | § | |
| ALCANTRA; aka KIKI; aka JOSE, | § | |
| Petitioner | § | |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO § 2255 MOTION

The United States respectfully requests that this Court deny the § 2255 Motion filed by Pedro Herrera-Alvarado because the record conclusively shows that no relief is appropriate. *United States* v. *Santora*, 711 F.2d 41 (5th Cir. 1983). Herrera-Alvarado's ineffective assistance of counsel claims are meritless because he fails to meet his burden under *Strickland* to show that counsel performed deficiently, causing him prejudice, and his claims are contradicted by the record. His motion cannot support relief and should be denied.

## I. Herrera-Alvarado and his brother were heroin distributers and organizers of a drug trafficking organization.

Pedro and his brother Jose Herrera-Alvarado operated a drug trafficking organization ("DTO") in Houston, Texas. PSR ¶ 8.[1] The Herrera-Alvarado brothers recruited and directed co-defendants Aaron Cervantes, Genaro Nunez, Demetrio Rodriguez, and Jaime Telles-Santos to store and distribute large amounts of heroin, other narcotics, and firearms. PSR ¶ 8.

In April 2014, a DPS trooper stopped Nunez, Rodriguez, and Telles-Santos in Port Arthur, Texas for speeding. PSR ¶ 9. Nunez consented to a search of the vehicle, and the trooper discovered 2,018 grams of heroin, 251 grams of methamphetamine, 200 grams of cocaine, 1.9 ounces of marijuana, and 16 firearms in a hidden compartment. PSR ¶ 9. A video from Nunez's phone showed Rodriguez, Telles-Santos, a man named "Clyde," and Arthur Small at a farm with the vehicle and the same narcotics and firearms that were seized. PSR ¶ 10. DEA agents

---

[1] "DE" refers to docket entries in Crim. No. 15-CR-00044; "PSR" refers to the presentence investigation report filed on January 24, 2017.

interviewed Small who admitted to purchasing heroin from Rodriguez and Herrera-Alvarado on multiple occasions. PSR ¶ 11.

DEA opened an investigation into the DTO. One day in late 2014, DEA established surveillance near Cervantes's apartment. PSR ¶ 14. The agents observed the arrival of the Herrera-Alvarado brothers and watched Cervantes and his wife leave the apartment. *Id.* Agents stopped Cervantes and his wife, and they confirmed they lived at the apartment. *Id.* When the Herrera-Alvarado brothers left the apartment, the agents arrested them and Cervantes who had returned to the apartment. *Id.* Cervantes's wife confirmed she lived there with Cervantes and their children and consented to a search of apartment. *Id.* In the apartment, agents observed various materials used to process or "cut" heroin, other drug paraphernalia, and discovered 3,236 grams of black tar heroin. PSR ¶ 15.

### a. Herrera-Alvarado threatens Cervantes.

DEA agents interviewed Cervantes twice following his arrest. PSR ¶¶ 19, 31. Cervantes reported that he was employed by the DTO to deliver large quantities of heroin to customers and to return the proceeds to the Herrera-Alvarado brothers. PSR ¶ 19. Cervantes provided the

3

names and descriptions of the DTO's customers and the amount of drugs that were sold to them. PSR ¶¶ 32-42.

Herrera-Alvarado directed Cervantes to use an apartment as a location to store and process heroin. PSR ¶ 19. On the day of their arrest, the Herrera-Alvarado brothers arrived at the apartment to prepare and package the heroin. PSR ¶ 44. While they were cutting and preparing the heroin, Cervantes was running errands and delivering heroin at Herrera-Alvarado's instruction. *Id.* After their arrest, Cervantes and the Herrera-Alvarado brothers were placed in the same patrol car. *Id.* Herrera-Alvarado told Cervantes to confess that the heroin in the apartment was his and that prisoners would know why they were incarcerated and who put them there thereby threatening Cervantes if he did not accept responsibility. *Id.* Cervantes told agents that he was intimidated by Herrera-Alvarado. *Id.*

### b. Intercepts confirm Herrera-Alvarado instructed Cervantes and others on the delivery of drugs.

The DEA's investigation was comprised of authorized intercepts on Herrera-Alvarado's phones, which confirmed that Herrera-Alvarado facilitated the drug trafficking conspiracy. PSR ¶ 21. In one intercepted phone call, Herrera-Alvarado advised Cervantes on how to avoid police

detection. PSR ¶ 24. Herrera-Alvarado instructed Cervantes to travel with family members and to have a car seat in the back of the car to appear less suspicious while driving and to remain calm when other vehicles are stopped. *Id.* In multiple intercepted calls, Herrera-Alvarado arranged heroin deliveries to customers. PSR ¶ 21. The intercepts, the observed drug transactions, and co-conspirators' interviews identified approximately 31,026 grams of heroin were sold. PSR ¶ 53.

### c. DTO's customers described Herrera-Alvarado with a gun during heroin deliveries.

DEA agents also interviewed DTO customers, Ronnie and Lynn Mayhall. PSR ¶ 25. The Mayhalls purchased heroin from the DTO since 2005. *Id.* Herrera-Alvarado described the inner-workings of the DTO to the Mayhalls and that Herrera-Alvarado told them he traveled around the state and to Illinois and California. PSR ¶ 26. The Mayhalls confirmed that Herrera-Alvarado carried a handgun while making heroin deliveries and that he would always display the handgun to the Mayhalls. PSR ¶ 27, 29.[2] Herrera-Alvarado introduced the Mayhalls to

---

[2] Co-defendant Gustavo Velez-Nieves worked at a wireless store that sold stolen property and confirmed that Herrera-Alvarado would frequently visit to purchase cellphones. PSR ¶ 45. He confirmed that Herrera-Alvarado was always armed with a handgun, that he would wave the handgun around the store, and he once fired several rounds into the store's ceiling. *Id.*

his brother and that after Herrera-Alvarado was arrested in 2010 on a separate drug offense, Jose Herrera-Alvarado and other members of the DTO would make the heroin deliveries. PSR ¶¶ 28, 29.

## II.  Herrera-Alvarado pleads guilty and is sentenced to life in prison.

A federal grand jury indicted Herrera-Alvarado in a superseding indictment for conspiracy to possess with intent to distribute one kilogram or more of heroin (Count One); possession with intent to distribute one kilogram or more of heroin (Count Two); conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (Count Three); conspiracy to possess with intent to distribute cocaine (Count Five); and possession with intent to distribute 1 kilogram or more of heroin (Count Nine). DE 30.

### a. Herrera-Alvarado testified he understood he was facing a life sentence.

Herrera-Alvarado, with the benefit of a plea agreement, plead guilty to count one of the superseding indictment. DE 188. His written plea agreement provided, in relevant part, that:

- He would plead guilty to count one of the superseding indictment, and in exchange the United States would move to dismiss the remaining counts, would dismiss the indictment in an illegal

6

reentry against him, and would recommend that three-level timely acceptance of responsibility reduction; *Id.* at 1.

- The parties agreed that the statutory maximum penalty for each violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) is a mandatory minimum term of ten years to imprisonment for life; *Id.* at 2;

- He agreed to "knowingly and voluntarily waiv[e] the right to "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under United States Code, section 2255"; *Id.* at 5

- He agreed that he was satisfied that his attorney has rendered effective assistance of counsel ; *Id.* at 8

During rearraignment, Herrera-Alvarado was placed under oath (DE 390 at 3), and testified to the following:

- He discussed the indictment with his counsel and was fully satisfied with counsel's representation; *Id.* at 5

- That he understood the terms of the plea agreement, he had discussed it with his attorney, and understood what he was agreeing to; *Id.* at 6-7

- A part from the written plea agreement, no one had made any promises to him in connection to the plea agreement; *Id.* at 7

- No one had attempted to force him to plead guilty; *Id.* at 8

- He understood that he was facing "not less than 10 years imprisonment, up to life imprisonment without probation, parole or suspended sentence"; *Id.* at 9-10

- He understood that he had the right to plead not guilty and that if he persisted in a plea of not guilty, he had the right to a trial by jury or judge; *Id*. at 13-14

Herrera-Alvarado apologized to the district court (Harmon, J.) and told the district court that he was pleading guilty because "my brother and I sold drugs." *Id*. at 19-20.  The district court found that Herrera-Alvarado was fully competent, aware of the nature of the nature of the charge, and the consequences of the plea's plea of guilty. *Id*. at 21.

### b. Herrera-Alvarado's Guideline range was life imprisonment.

Herrera-Alvarado's offense level was 36. PSR ¶ 60. Herrera-Alvarado received the following enhancements: a two-level enhancement for possessing a firearm; a two-level enhancement for intimidating Cervantes; and a four-level enhancement because Herrera-Alvarado was an organizer and leader of the DTO. PSR ¶¶ 60-62, 64. Because Herrera-Alvarado received an obstruction of justice enhancement, Herrera-Alvarado did not receive an acceptance of responsibility reduction. PSR ¶ 67.

Herrera-Alvarado's prior counsel filed objections to the PSR objecting to all of the enhancements. DE 308. Herrera-Alvarado objected to the amount of drugs that he was held accountable and argued that the

base offense level should have been 30. *Id*. at 1. He denied possessing a firearm, engaging in witness intimidation, and that he was an organizer or leader in criminal activity. *Id*. at 2. He also argued that he was entitled to a mitigating role reduction under U.S.S.G. § 3B1.2. *Id*. at 3.   The United States filed a response to Herrera-Alvarado's objections, and argued that the evidence supported all of the enhancements and that Herrera-Alvarado was not entitled to a mitigating role reduction. DE 310. The probation officer filed an addendum stating that the Guidelines were properly applied and correctly calculated. DE 311.

At the beginning of sentencing, the district court (Harmon, J.) asked Herrera-Alvarado if he had the chance to have the presentence report translated, and if he understood what was contained in the report. DE 374 at 2. Herrera-Alvarado replied that it was translated and he understood the terms. *Id*. The district court also asked if he had any objections to the report that his attorney did not make on his behalf. *Id*. at 3. Herrera-Alvarado responded, "No. It's fine." *Id*.

Herrera-Alvarado's counsel vigorously renewed the same objections he made in the presentence report. *Id*. Herrera-Alvarado's counsel first addressed the intimidation enhancement and argued that there was

insufficient evidence to support it and that the Government agreed to move for acceptance of responsibility under the terms of the plea agreement. *Id*. at 3-4, 6-7. He then argued that the amount of drugs attributed to Herrera-Alvarado was erroneously calculated. *Id*. at 10-11. Herrera-Alvarado's counsel argued that there were no photos to support the weapon enhancement. *Id*. at 12-13. He also argued that the Herrera-Alvarado should not be held accountable as a leader of the conspiracy. *Id*. at 13-14.

The Government responded to Herrera-Alvarado's objections. *Id*. at 4-5, 8-10, 14-20. After considering both arguments, the district court overruled the objections and adopted the PSR. *Id*. at 21. The Government moved for a one-level reduction for Herrera-Alvarado pleading guilty and saving judicial resources. *Id*. at 22. The district court granted the one-level reduction. *Id*.

Herrera-Alvarado's counsel addressed the district court and asked for a variance or downward departure from the Guidelines. *Id*. at 23-24. Herrera-Alvarado then addressed the district court, expressed remorse, and asked for a "low sentence." *Id*. at 25-26. The district court imposed a life sentence because it:

10

> "takes into account the defendant's conduct of the instant offense and appropriately sanctions illegal activities, his sentence is adequate and meets the objectives of United States Code Section 3553(a), which instructs the Court to impose a sentence sufficient, but not greater than necessary, when considering the nature and circumstances of the offense and the history and characteristics of the defendant."

*Id.* at 28-29. The district court also stated that it "would impose a life sentence, notwithstanding the legal objections." *Id.* at 32. Herrera-Alvarado appealed his sentence arguing that the district court failed to ensure that he understood the nature of the charge against him, comply with Federal Rule of Criminal Procedure 11[3], and determine that he understood the terms of the appellate waiver. DE 346. The Fifth Circuit found the district court did not commit any error and dismissed his appeal based on the appellate waiver. DE 400. Herrera-Alvarado timely filed a motion to vacate. DE 405.

## III. Herrera-Alvarado's motion cannot support relief and should be denied.

In his motion, Herrera-Alvarado asserts that his counsel rendered constitutionally ineffective assistance by failing to:

---

[3] The Fifth Circuit noted that this claim was frivolous because it involved his brother's rearraignment not Herrera-Alvarado's rearraignment. DE 401.

1. Communicate and inform him of the consequences of pleading guilty;

2. File any substantive pretrial motions;

3. Conduct an adequate and independent pretrial investigation;

4. Negotiate a favorable plea agreement;

5. Review, discuss, and explain the PSR to him;

6. Properly argue objections to the PSR;

7. Argue for mitigation of punishment and object to his sentence as being substantively unreasonable.

DE 405.

Because his claims are meritless, Herrera-Alvarado's § 2255 motion should be denied.

### a. Standard of Review for § 2255 Motions

Motions pursuant to 28 U.S.C. § 2255 may only seek relief for particular types of errors. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). A movant may raise a jurisdictional or constitutional claim, however, a motion under § 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

A § 2255 motion may be resolved without an evidentiary hearing where the files, the motion, and record of the case conclusively show that

no relief is appropriate. *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same). Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.

### b. Ineffective Assistance of Counsel Law

A Sixth Amendment claim of ineffective assistance of counsel presented in a § 2255 motion is analyzed using the Supreme Court's two-step test in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To prevail on this claim, the movant must demonstrate that his counsel's performance was both deficient and prejudicial. *United States v. Willis*,

273 F.3d 592, 598 (5th Cir. 2001). This means that the movant must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* (citing *Strickland*, 466 U.S. at 687). Second, the movant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014). A movant must satisfy both components of *Strickland* and the failure to establish either deficient performance or prejudice is fatal to their claim. 466 U.S. at 687.

> ### i. Herrera-Alvarado has not met his *Strickland* burden on proving his claim that his attorney failed to communicate with him about the consequences of pleading guilty.

Herrera-Alvarado contends that his prior counsel failed to communicate with him and inform him of the consequences of pleading guilty. DE 405 at 5; 406 at 15-17. When a defendant pleads guilty on the advice of counsel, counsel has the duty to advise the defendant of the available options and possible consequences. *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981). "Further, collateral relief is appropriate where trial counsel was ineffective by giving a defendant substandard advice about his sentence exposure under the Sentencing

Guidelines during plea negotiations." *Wimberly v. United States*, No. 1:16-CV-204, 2019 WL 4691727 at * 8 (E.D. Tex. Sept. 25, 2019).

Here, Herrera-Alvarado's statements that his counsel failed to communicate and inform him of the consequences of pleading guilty are directly contradicted by his own testimony at the rearraignment hearing. Herrera-Alvarado testified that he discussed the charges with his attorney and that he was satisfied with his attorney. DE 390 at 5. He admitted that the plea agreement was translated for him, that he discussed the terms of the plea agreement with his attorney, and that he understood the terms of the agreement. *Id.* at 6-7. When the district court reviewed the penalties that he was facing, which was not less than 10 years and up to life imprisonment, he affirmed that he understood the maximum possible penalties. *Id.* at 9-10. Herrera-Alvarado testified that he understood the consequences of pleading guilty, including the rights he was giving up by pleading guilty. *Id.* at 13-14. Herrera-Alvarado was also aware of the evidence against him. *Id.* at 17-20. After being aware of the consequences and his circumstances of pleading guilty, Herrera-Alvarado made a fully informed choice to plead guilty. *Id.* at 21; *see also*

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Accordingly, Herrera-Alvarado has failed to satisfy his burden of proving counsel's performance was deficient. Even assuming counsel's performance was deficient, Herrera-Alvarado has failed to demonstrate how he was prejudiced by his counsel's performance.

### ii. Herrera-Alvarado has not satisfied either prong of *Strickland* in proving his counsel failed to file any helpful pretrial motions.

Herrera-Alvarado contends that his counsel failed to file any pretrial motions such as "Motion for Discovery; Request for Rule 404(b) of the Federal Rules of Evidence [Material]; Motion for Brady/Giglio Material; and for Equal Access for Purposes of Interview; and a Motion to Suppress Evidence or Exhibits." DE 406 at 17. He argues that had any of these motions been filed, he could have made "an informed decision on whether to plead guilty or proceed to trial." *Id*.

"The filing of pretrial motions falls squarely within the ambit of trial strategy" and "[c]ounsel is not required to engage in the filing of futile motions." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) Thus, where a defendant alleges that his counsel rendered ineffective

assistance by failing to file particular pretrial motions, in order to meet his burden to show deficient performance, he must "overcome the presumption that [not filing the suggested motions] was within the realm of trial strategy." *Id.* Herrera-Alvarado fails to discuss in detail what evidence these motions would acquire, much less overcomes the presumption that counsel's decision to forgo these motions was within the realm of trial strategy and to show that the Constitution compelled counsel to file these motion. Herrera-Alvarado also has not demonstrated that any of these motions would have been granted, or would have affected the outcome of the case if his counsel would have pursed them. Herrera-Alvarado, accordingly, fails to satisfy either prong of *Strickland*.

### iii. Herrera-Alvarado has not met his burden under *Strickland* regarding his claim counsel failed to conduct an adequate pretrial investigation.

Herrera-Alvarado argues that his prior counsel failed to "research the case law, interview witnesses or investigate the facts" and that there was "no independent pretrial investigation to challenge the government's case-in-chief." DE 406 at 19. He argues that had an investigation been completed, his counsel would have realized that "no drugs were found nor

tested on the day of the arrest. No physical evidence, nothing but a fictional story." *Id*. at 24.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). Herrera-Alvarado fails to satisfy his burden and the record controverts his claim there was no evidence to support his conviction. As reflected in the PSR and at sentencing, the evidence showed that Herrera-Alvarado was a leader and organizer of a narcotics trafficking conspiracy that dealt in multi-kilogram quantities of heroin and other narcotics over an extended period of time. PSR ¶¶ 13-24. The evidence to support Herrera-Alvarado's conviction are multiple interviews his co-conspirators Cervantes, Velez-Nieves, Nunez, and Ortiz, interviews with his customers, wire-taps, drug seizures, surveillances, and the seizure of corroborating evidence during Herrera-Alvarado's arrest (including packaging materials for storage or distribution such as balloons, black plastic tape, scales, and chemical "cutting" agents). Herrera-Alvarado's allegation that an investigation

would have uncovered "no physical evidence" is controverted by the record.

Herrera-Alvarado also offers no further details on which witnesses his counsel should have interviewed. Given the totality of the circumstances, Herrera-Alvarado has not shown—and cannot show— that "the result of the proceeding would have been different" if his counsel had investigated witnesses or additional facts.

> ### iv. Herrera-Alvarado has not met his burden under *Strickland* regarding his claim counsel failed to attempt to negotiate a favorable plea agreement.

Herrera-Alvarado repeatedly asserts, in six pages, that his counsel failed to negotiate a favorable plea agreement and that he was "misinformed" about the consequences of pleading guilty. DE 406 at 28-34. "A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence." *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002). "In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands." *Id.* (citing *Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993).

Herrera-Alvarado gained the following benefits from the plea agreement: the Government agreed to dismiss the remaining counts against him; agreed to dismiss the indictment in his illegal reentry case; and agreed to recommend a three level reduction for acceptance of responsibility. DE 188 at 6-8. Contrary to Herrera-Alvarado's allegation, the plea agreement provided the potential for a lesser sentence. Herrera-Alvarado understood the statutory maximum penalty of ten years to life imprisonment. *Id*. at 2. Based upon his testimony at his rearraignment hearing, there leaves no doubt that Herrera-Alvarado knew he was facing a life sentence, understood the sentencing process, and in particular, that his sentence would not be determined until sentencing. DE 390 at 6-10. Herrera-Alvarado cannot demonstrate that he did not understand the consequences of pleading guilty and that he was facing up to life in prison.

Even if prior defense counsel predicted a lower sentence, Herrera-Alvarado's "reliance on that sentencing estimate would have been unreasonable given the numerous warnings he received at his Rearraignment that the maximum sentence for the [sic] offense to which he was pleading guilty was life." *United States v. Riojas*, No. CIV.A. H-

04-2093, 2006 WL 3254523, at *19 (S.D. Tex. Nov. 9, 2006). Further, by pleading guilty Herrera-Alvarado "had the potential for a less harsh sentence given that the Government dismissed the remaining counts" and "the potential for a three-level reduction for acceptance of responsibility." *Id*. Had Herrera-Alvarado gone to trial, "it is highly likely that the jury would have found him guilty, based on the evidence, and there would have been no chance of a reduction based on his cooperation." *Id*. To the extent that his counsel could have negotiated a better plea, upon this record, he cannot prove that the Government would have been willing to enter such an agreement. Given the potential sentencing benefits Herrera-Alvarado gained by pleading guilty, Herrera-Alvarado has not demonstrated that his counsel's performance was deficient under *Strickland* in negotiating a fair plea.

> **v. Herrera-Alvarado has not met his burden under *Strickland* regarding his claims that counsel failed to review and properly argue objections to the PSR.**

Herrera-Alvarado asserts that his counsel failed to review the PSR with him and failed to properly argue his objections to the PSR. DE 406 at 35-38. The record belies his claims.

To the extent that Herrera-Alvarado is arguing that his rights under Rule 32[4] were violated, that claim is futile "because he has not demonstrated why he could not have raised the claim on direct appeal or via a motion filed pursuant to Fed. R. Crim. P. 35(c)." *See United States v. Navarro-Perez*, 200 F.3d 814 (5th Cir. 1999).  In any event, at the sentencing hearing, Herrera-Alvarado testified that he had the chance to have his presentence investigation report translated for him, that he understood what was contained in the presentence report, and that he did not have objections to the report besides the ones raised by his counsel on his behalf. DE 374 at 2-3. Further, Herrera-Alvarado must also show prejudice under *Strickland,* which he has not, therefore he fails to meet his burden.

Herrera-Alvarado also asserts his counsel failed to properly argue the objections. DE 406 at 35-38. He argues that prior counsel failed to argue that he was not involved in the conspiracy and the amount of drugs that were attributed to him. *Id*. at 37.  Herrera-Alvarado denies that he was a leader of the conspiracy because "he was mainly a drug user." DE

---

[4] Rule 32(i)(1)(A) requires that the district court verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report.

406 at 35. He also contends that the PSR contained felonies that were not his and his criminal history category should have been II. *Id.* at 37. Herrera-Alvarado also complains that he did not intimidate Cervantes. *Id.* at 38.

First, prior counsel filed objections to all the enhancements. DE 308; DE 374. He argued that Herrera-Alvarado was not a leader of the conspiracy, he should receive a mitigating role enhancement, and prior counsel objected to the amount of drugs attributed to Herrera-Alvarado. DE 308 at 1, 3-5.

Second, the evidence supports all of the enhancements. As explained above, interviews with multiple co-conspirators, surveillance, intercepts, and interviews proved that Herrera-Alvarado instructed and facilitated a wide-spread drug organization with his brother. PSR ¶¶ 8, 11, 18, 21-22, 24-30. Cervantes told agents he was intimidated by Herrera-Alvarado and the government provided the report detailing the recording of the Cervantes and Herrera-Alvarado's conversation. PSR ¶ 44; DE 310-11. Herrera-Alvarado has not offered any evidence that the felonies attributed to him are not his, and he testified that he did not have any objections to them. DE 374 at 3.

Herrera-Alvarado simply offers up his "personal disagreement and conclusory denial of the facts recited in these PSR paragraphs, which would provide counsel with little-to-no basis on which to challenge successfully the information or lodge successful objections –within a reasonable probability—to these paragraphs." *See Linares v. United States*, No. CR M-13-1081-2, 2017 WL 1149207, at *3 (S.D. Tex. Mar. 2, 2017), *report and recommendation adopted,* No. CR M-13-1081-2, 2017 WL 1106359 (S.D. Tex. Mar. 24, 2017). That is not enough to meet Herrera-Alvarado's burden under *Strickland* and his claims should be denied.

### vi. Herrera-Alvarado fails to demonstrate that his counsel's performance was deficient under *Strickland* regarding his counsel's failure to object to his sentence.

Finally, Herrera-Alvarado asserts that his counsel failed to object to his sentence as to being substantively unreasonable because it "[over represents] the seriousness of his criminal history or the likelihood that he will commit other crimes." DE 406 at 38. He also argues that his attorney "failed to file any kind of motion for a downward variance." *Id.*

To the extent that Herrera-Alvarado contends counsel failed to appeal his sentence as substantively unreasonable under § 3553(a),

24

Herrera-Alvarado cannot satisfy either prong under *Strickland* in light of the valid appellate waiver. *See United States v. Herrera-Alvarado,* 728 F. App'x 321, 322 (5th Cir. 2019) (Finding district court confirmed Herrera-Alvarado's understanding of the appellate waiver and finding waiver is valid). Counsel neither performed deficiently nor caused him prejudice by failing to raise the issue on appeal since the Fifth Circuit could not have substantively considered the issue in light of the waiver.

Prior counsel also did not perform deficiently by failing to object because counsel is not required to make futile objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Herrera-Alvarado's Guideline range was life imprisonment. PSR ¶ 116. His Guideline sentence is presumed to be reasonable. *United States v. Rodriguez-De la Fuente*, 842 F.3d 371, 375 (5th Cir. 2016) ("[A] within-guidelines sentence is reasonable."). Herrera-Alvarado also cannot show that he was prejudiced by counsel's failure to object. The district court explicitly stated that it considered the § 3553(a) factors and that it "would impose a life sentence, notwithstanding the legal objections." DE 374 at 32. Accordingly, this claim fails.

As to Herrera-Alvarado's claim that his counsel should have filed a motion for a downward variance, that claim also fails. First, prior defense counsel requested that Herrera-Alvarado receive a mitigating role reduction. DE 310; 374 at 13. Second, prior defense counsel requested "a possible variance or downward departure" at sentencing. DE 374 at 23. Herrera-Alvarado cannot prove deficient performance or prejudice because the Court denied the request and stated that it would impose a life sentence "notwithstanding the legal objections," *Id*. at 32. This claim also fails.

## IV.   Conclusion

The United States respectfully requests that this Court dismiss Herrera-Alvarado's § 2255 motion. The record conclusively demonstrates that no relief is appropriate; thus, no evidentiary hearing is needed. *Santora*, 711 F.2d at 42. Because reasonable jurists could not disagree with the denial of the § 2255 motion, no certificate of appealability should issue. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ *Catherine Pick*
CATHERINE PICK
Assistant United States Attorney
Texas Bar No. 24101749
Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
(713) 567-9102

## CERTIFICATE OF SERVICE

I, Catherine Pick, certify that a true and correct copy of the foregoing United States' Memorandum in Opposition to Pedro Herrera-Alvarado's Motion for Relief under 28 U.S.C. § 2255 was electronically filed with the United States District Clerk for the Southern District of Texas on December 9, 2019. A true and correct copy of the foregoing motion will be served on December 9, 2019 via certified mail, return receipt requested, addressed to:

Mr. Pedro Herrera-Alvarado
Reg. No. 80000-379
USP Beaumont
P.O. Box 26030
Beaumont, TX 77720

/s/ *Catherine Pick*
CATHERINE PICK
Assistant United States Attorney