**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
F I L E·D

FEB 0 4 2020

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **PEDRO HERRERA-ALVARADO,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 4:19-CV-3617** |
| | ) | **Crim No. 4:15-CR-44-3** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPLY TO UNITED STATES' MEMORANDUM
## IN OPPOSITION TO § 2255 MOTION

COMES Movant, PEDRO HERRERA-ALVARADO ("Herrera-Alvarado"),

appearing *pro se,* and replies to government's response ("GR") in opposition to

Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence ("§ 2255 Motion") as follows:

### I. PRELIMINARY STATEMENT

As a preliminary matter, Herrera-Alvarado respectfully requests that this Court

be mindful that *pro se* pleadings are to be construed liberally. See *United States v.*

*Kayode*, 777 F.3d 719 (5th Cir. 2014) (*Pro se* pleadings are to be held to less stringent

standards than formal pleadings drafted by lawyers, and should therefore be liberally

construed); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner,*

404 U.S. 519, 520 (1972) (same). Secondly, Herrera-Alvarado adopts by reference and in whole his arguments previously filed in his § 2255 Motion. See Doc. 405.[1]

## REPLY TO GOVERNMENT'S RESPONSE

The GR is divided into four (4) main sections: (I) Herrera-Alvarado and his brother were heroin distributers and organizers of a drug trafficking organization; (II) Herrera-Alvarado pleads guilty and is sentenced to life in prison; (III) Herrera-Alvarado's motion cannot support relief and should be denied; and (IV) Conclusion. See Doc. 409. Herrera-Alvarado will reply sequentially to each section of the GR as follows:

**I-II. Herrera-Alvarado and his brother were heroin distributers and organizers of a drug trafficking organization and Herrera-Alvarado pleads guilty and is sentenced to life in prison.**

The government in this section of the GR gives a fair and accurate reading of the procedural background in this case. *Id.* at 2-6. Herrera-Alvarado does not object to this section of the GR. However, it is essential to note that Herrera-Alvarado pleaded guilty to Count 1s of the Superseding Indictment was based on his counsel's advice. As argued in his § 2255 Motion, Herrera-Alvarado reiterates the following:

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Southern District of Texas, Houston Division in Criminal No. 4:15-cr-00044-3, which is immediately followed by the Docket Entry Number.

Thering, without investigating the facts of this case, outright convinced Herrera-Alvarado that by pleading guilty he would receive no more than ten (10) years in prison. Thering was not able to lay out a strategy in Herrera-Alvarado's defense. Further, he failed to explore the factors revolving Herrera-Alvarado's case. Herrera-Alvarado have never seen a Plea Agreement before, but after reviewing, he noticed that there was no sentencing time specified, and definitely government offered nothing in exchange for his guilty plea except for the government's agreement to: dismiss any remaining counts of the Superseding Indictment and the Indictment under Docket No. 4:1SCR00047-001, at sentencing; and agreed not to oppose Herrera-Alvarado's anticipated request for a three-level reduction for acceptance of responsibility). Basically, the Plea Agreement was a dummy plea that could still leave Herrera-Alvarado with Life sentence.

**Fact**: The offense calculation was incorrect. Herrera-Alvarado's offense level was enhanced because of the following: firearm, obstruction of justice, and leadership role. There's no way that Herrera-Alvarado could be a leader of the conspiracy because he was always drunk and drugged. He was often than not, not in his right senses. In reality, the agents were laughing at Herrera-Alvarado because he asked for food because he was using drugs and alcohol without eating. The DEA agents fabricated stories contained in the PSR.

## III. Herrera-Alvarado's motion cannot support relief and should be denied.

In this section of the GR, the government opines that Herrera-Alvarado's §

2255 Motion should be denied because his claims are meritless. *Id.* at 11-12.

Contrary to the government's opinion, Herrera-Alvardo argues that: (i)

Herrera-Alvarado has met his *Strickland* burden on proving his claim that his attorney

failed to communicate with him about the consequences of pleading guilty; (ii)

Herrera-Alvarado has satisfied either prong of *Strickland* in proving his counsel

failed to file any helpful pretrial motions; (iii) Herrera-Alvarado has met his burden under *Strickland* regarding his claim counsel failed to conduct an adequate pretrial investigation; (iv) Herrera-Alvarado has met his burden under *Strickland* regarding his claim counsel failed to attempt to negotiate a favorable plea agreement; (v) Herrera-Alvarado has met his burden under *Strickland* regarding his claims that counsel failed to review and properly argue objections to the PSR; and (vi) Herrera-Alvarado demonstrated that his counsel's performance was deficient under *Strickland* regarding his counsel's failure to object to his sentence.

In general, the government concludes that Herrera-Alvarado's counsel was not ineffective. But, Herrera-Alvarado asserts that perception or judgment always differ if your on the outside looking in. Herrera-Alvarado strongly believed that his counsel had no plans to proceed to trial, that's why no strategic defense plan was ever formulated, instead he was pushed to plead guilty, by use of deceptive scheme. With how everything transpired in this case, no person in his right mind would plead guilty to receive a life sentence, when you can fight your case and receive the same. Would you not fight for your life and just give up and accept life imprisonment? No one would agree that counsel did his job effectively or efficiently for the benefit of Herrera-Alvarado.

In this case, there were no physical evidence presented in Court, except for the government's narration of events and testimonies from cooperating witnesses, which were used in Herrera-Alvarado's PSR Offense Conduct. Because of the lack of assistance from Thering, Herrera-Alvarado was unable to obtain the Discovery that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial. Without this information, he was unable to make an informed decision. As such, he relied on Thering's erroneous advice to his detriment. Had he been given the Discovery in order to assess and evaluate the government's case-in-chief, there is a reasonable probability that he would have opted to proceed to trial and receive a substantially lower sentence. Thering's representation was deficient because Herrera-Alvarado was not properly informed of the relevant circumstances and likely consequences of pleading guilty as opposed to standing trial in order to make an informed decision about which course to take.

Thering pushed Herrera-Alavardo to plead guilty to an offense he knew nothing about. In this case, on May 13, 2016, Thering advised Herrera-Alavarado to enter a guilty plea, at which the Government made the following representation as to what the Government would show:

> Sometime between on or about January 1, 2005 continuing until on or about December 23rd, 2014 at or near Houston, Texas and in other locations all within the jurisdiction of this Court, the defendant Pedro

Herrera-Alvarado, knowingly and intentionally conspired and agreed with several other people, to include Jose Herrera-Alvarado and others to possess with intent to distribute one kilogram or more of a mixture of substance containing a detectible amount of heroin, a Schedule I controlled substance. In order to accomplish the object of this offense the defendant engaged in a variety of activities, including but not limited to possessing and transporting heroin in the Houston, Texas area and/or helping others engage in that type of illegal activity. The amount of heroin the defendant was personally involved in regarding these activities was at least one kilogram, and the defendant also understood and expected this amount of heroin to be the object of the conspiracy. During the course of the conspiracy the defendant, along with his brother Jose Herrera-Alvarado, was a supplier of kilogram quantities of heroin in the Houston, Galveston and Dallas, Texas areas. The defendant supplied heroin to street level dealers who in turn would sell heroin to heroin users.

See ROA. 231.

**Fact:** Thering advised Herrera-Alvarado to agree to the aforementioned stipulation of facts drafted by the government, although he knew the statements contained were far from reality (i.e., conspiracy began in 2005, which was never supported by evidence).

Herrera-Alvarado did not admit to these facts. Instead, he proceeded to ask, in rambling fashion, forgiveness from the District Court as follows:

> THE COURT: Mr. Herrera, can you tell me in your own words what it is you did to commit the crime you're pleading guilty to this morning.
>
> THE DEFENDANT: I was intoxicated, I was drugged up, I was alcoholized. And I ask the Court to forgive me and forgive myself and others.

MR. THERING:   Go ahead and finish what you were saying.

THE DEFENDANT:   I am very --

THE COURT:   I am sorry?

See ROA. 233.

After consulting with his attorney, Herrera-Alvarado elocuted as follows:

MR. THERING:   Okay, Judge. I would like Mr. Alvarado to continue
answering your question, what is the reasoning and
his involvement for his plea of guilty.

THE DEFENDANT:   Well, because my brother and I sold drugs.
We got involved and we --

THE COURT: It was heroin that you were selling?

THE DEFENDANT: Yes, madam.

THE COURT: Okay.

See ROA. 21.

The May 13, 2016, arraignment in which a guilty plea was accepted was the

last of three (3) re-arraignments. At a re-arraignment held November 20, 2015,

Herrera-Alvarado presented for the purpose of pleading to the same count, Count

One, of the Superseding Indictment, which he ultimately pled to. See ROA.191. At

the November 20, 2015, re-arraignment the Court realized that Herrera-Alvarado was

not admitting that he engaged in the conduct that the government alleged violated

Count One.

THE COURT: Mr. Herrera-Alvarado, would you tell me in your own words please what it is you did to commit the crime you're pleading guilty to this morning.

THE DEFENDANT: I would receive a call from a person who would ask me about that substance. I carried out the crime; but with certain number of people who were there, I had nothing to do with. It's very hard for me.

THE COURT: Well, let me ask you this: Did you and your brother agree to undertake the business of providing heroin to various people to redistribute?

THE DEFENDANT: No.

MS. MAC DONALD: We have a problem, your Honor.

THE COURT: Okay. All right. Well, I can't accept the plea. I guess we're going to have to go to trial. So, we're set for trial in this case sometime. I'm not sure when.

See ROA. 206.

**Fact:** It was only during the Plea Hearing that Herrera-Alvarado realized that he was being held liable for 1 kilogram of heroin. Thering made him [Herrera-Alvarado] believe that he already had an agreement with the government that only requires Herrera-Alvarado to plead guilty and the government will close his case without causing any harm to Herrera-Alvarado and his brother (Jose)– which turned out to be a big fat lie.

**Note:** At the time of the Defendant's arrest, Cesar Rodriguez came to Herrera-Alvarado and advised him that he already knew everything about him. Herrera-Alvarado witnessed Rodriguez took some papers and handed them to Mrs. Cruz for signature– to be able to search the apartment. About half an hour after, Herrera-Alvarado was arrested based on a search and seizure that does not have evidence pointed to him. Herrera-Alvarado was nothing but an alcoholic and a drug addict.

However, after the District Court determined that it could not accept a guilty plea, the Court continued to engage the defendant in discussions of the offense. Rather than objecting to the factual elements of the offense, Thering simply advised Herrera-Alvarado to plead guilty. Finally, the District Court asked Herrera-Alvarado to sign the plea agreement, before making the customary and necessary finding that the District Court had an adequate basis on which to accept a guilty plea. ROA.207-208.

In this case, no pretrial investigation was ever conducted to put together any evidence that Herrera-Alvarado could have benefited from. Thering failed to interview witnesses, he did not even asked if Herrera-Alvarado had anyone he could talk to. Thering did no independent investigation other than reading the government's case file, else, he would have learned that there are inaccuracies in the report of the undercover agent (UC), i.e., On December 23, 2014, the day of Herrera-Alvarado's

9

arrest, the UC reported that Herrera-Alvarado and co-conspirators were at the apartment around 12:30 P.M. and found drugs inside the apartment. Although, it is important to note that no drugs were found nor tested on the day of the arrest. No physical evidence, nothing but a fictional story. It is also essential to note that this was Herrera-Alavarado's first time at the apartment, he did not even know who owns the said place.

Thering did not put the government's case to any kind of adversarial test (specifically, the credibility of the cooperating witnesses). Without such an adversarial testing of the government case, it was virtually impossible for Herrera-Alvarado to communicate, inform and come about a coherent action plan to criticize the government's offense. Because Herrera-Alvarado had failed to research the facts and applicable law of Herrera-Alvarado's case, he was unprepared and unable to give him any kind of meaningful or competent legal defense. Herrera-Alvarado was actually prejudiced based on Thering's deficient, incompetent, faulty, and flawed performance.

Herrera-Alvarado was coaxed to accept the government's plea offer that made no sense. Thering failed to negotiate a favorable Plea Agreement on Herrera-Alvarado's behalf. Thering directed Herrera-Alvarado to plead guilty pursuant to a written Rule 11(c)(I)(A) and (B) Plea Agreement [Doc. 188]. As advised by counsel,

Herrera-Alvarado agreed to waive his right to "collaterally attack" or contest his conviction or sentence by means of any post-conviction proceeding. In exchange for Herrera-Alvarado's guilty plea, the government agreed to: dismiss any remaining counts of the Superseding Indictment and the Indictment under Docket No. 4:1SCR00047-001, at sentencing; and agreed not to oppose Herrera-Alvarado's anticipated request for a three-level reduction for acceptance of responsibility. However, Herrera-Alvarado was not granted a three-level reduction for acceptance of responsibility in connection to his two-level enhancement for witness intimidation, pursuant to USSG § 2D1.1(b)(15)(D). No one in his right mind would plead guilty to an offense if he knew that he could receive life imprisonment. A person in sound mind could tell that fighting a case is well worth than admitting defeat and spending a lifetime in jail.

**Note:** At one time, Herrera-Alvarado asked Judge Melinda Harmon to assign him a new attorney because Thering, his then retained counsel was not doing his job well. However, Judge Harmon denied Herrera-Alvarado's request for a new counsel, stating that she already wanted to close Herrera-Alvarado's case and that she knew Thering was doing his job right.

Here, had Herrera-Alvarado knew that he would be facing a life sentence even after pleading guilty, he would have opted to go to trial, fight his case, prove the

prosecutor wrong, and receive a lower sentence. Herrera-Alavarado has shown that there is a reasonable probability that, but for his attorney's unprofessional advice in failing to properly and correctly inform his of the relevant circumstances and likely consequences of proceeding to trial or pleading guilty without a plea agreement, as opposed to pleading guilty to government's Plea Agreement, there is a reasonable probability that this Court would have imposed the same sentence and he would have retained his right to appeal. See *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). It is hard to imagine that Herrera-Alavarado's attorney didn't know this and encouraged his to plead guilty straight up to the Indictment.

As such, Thering performed below an objective standard of reasonableness. Had he familiarized himself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Herrera-Alvarado of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. He simply failed to do so, and as a result, Herrera-Alvarado was prejudiced by receiving a life sentence. *Glover*, supra. Thering misrepresentation of material facts, which Herrera-Alvarado wholly relied on, constituted deficient performance. He suffered prejudice from Thering's acts and omissions when he received a life sentence. As such, Herrera-Alvarado easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance.

Thering's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Herrera-Alvarado.

As such, Thering performed below an objective standard of reasonableness and his representation was deficient. Had he familiarized himself with the facts of the case and researched the applicable law and Guidelines, he would have been able to correctly inform Herrera-Alavarado of all of the likely consequences he faced if he pled guilty or proceeded to trial. He simply failed to do so, and as a result, with Herrera-Alavarado's guilty plea forced his to relinquish his direct appeal of his case. Thering's misrepresentation of material facts, which Herrera-Alavarado wholly relied on, constituted deficient performance. He suffered prejudice from Thering's acts and omissions when he received life imprisonment. As such, Herrera-Alavarado easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance.

Thering's advice was not a predication, probability, or an estimate, but rather a lack of communication with Herrera-Alvarado. In turn, Herrera-Alvarado had to wholly rely on his erroneous advice. Thus, Herrera-Alvarado was not fairly apprised of the consequences of his decision to proceed to trial. In other words, Herrera-Alvarado's reliance on Thering's significantly flawed advice about the consequences

of proceeding to trial rather than pleading guilty violated his due process rights. See

*Hill*, 474 U.S. at 56.

**Facts:**

- Herrera-Alavarado was not a leader of a conspiracy, he was not even part of the conspiracy. He was mainly a drug user. If the Report of Investigation [Doc. 310-1] would be revisited, it would read as follows (in the following quoted paragraph Pedro Herrera-Alvarado was referred to as Alvarado and Jose Herrera-Alvarado was referred to as Herrera-Alvarado):

  > "Cervantes met Pedro Alvarado through his brother Jose Herrera-Alvarado in the summer of 2014 while working at the taco stand. Cervantes relayed a story how Cervantes met Alvarado. Cervantes received a call from Herrera-Alvarado who instructed Cervantes to pick up his brother (Pedro) whose vehicle had broken down. Cervantes picked up Alvarado, during the ride Cervantes remembered Alvarado and his girlfriend (Brenda Alvarez) arguing because she didn't pick up Alvarado. After that, Cervantes routinely saw Alvarado at the taco stand. Soon there after, Cervantes would receive marijuana from Alvarado. Cervantes paid Alvarado in tacos for the marijuana. On one occasion, <u>Alvarado called Cervantes and asked Cervantes to bring Alvarado one "La morena" which is code for ounce of heroin.</u> Cervantes went to the apartment and retrieved (1) ounce of heroin and delivered it Alvarado. According to Cervantes, <u>Alvarado uses cocaine and marijuana on a daily basis</u>. Additionally, Alvarado had requested Cervantes to obtain fake Mexican identification cards for Alvarado, using different names."

*Id.* at 6-7.

- Cervantes never gave Herrera-Alvarado any drugs, therefore the statement that Cervantes delivered an ounce of heroin to Herrera-Alvarado is completely false. Herrera-Alvarado had some beers with Cervantes but that was it.

14

Here, Thering failed to properly argue Herrera-Alavardo's PSR Objections as he was not familiar with his case. He was not prepare to validate objections pertaining to: credit for acceptance of responsibility, objected to the dangerous firearm finding, witness intimidation, and to the leadership role in the instant offense. Further, Thering failed to argue Herrera'Alvarado's: (1) involvement in the conspiracy; and (2) amount of drugs attributable to him. Instead of working on Herrera-Alavarado's defense, Thering worked with the U.S Attorney to obtain Herrera-Alavarado's guilty plea. Moreover, he failed to investigate the facts of Herrera-Alavarado's case.

- The PSR contained felonies that were not Herrera-Alvarado's or were pending at the time of sentencing, but he received points towards his criminal history score [see PSR ¶ 74: 3 points; PSR ¶ 75: 3 points; and PSR ¶ 76: 2 points]. Had these cases been investigated and argued, Herrera-Alvarado's criminal history score would only total to 2, which would place him in Criminal History Category II.

Before going to Court, Thering visited Herrera-Alvarado saying that he would need to listen to a recording of his brother's (Jose's) conversation. In the recording, Jose was talking about many things with Cervantes. In the said recording, it was clear that Herrera-Alavarado had nothing to do with anything. He does not even know Cervantes– only saw him several times. However, when the Judge asked the prosecutor, what evidence he had against Herrera-Alvarado, the Prosecutor used that very same recording against him. The Prosecutor claims that she has a recording

15

where Herrera-Alvarado was in a patrol car and Jose and Cervantes joined him. Allegedly, Herrera-Alvarado told Cervantes that he was the one in the movie and that with those words he was stating that he had to blame himself for drugs. Nonetheless, Herrera-Alvarado never said those words. In fact, in some other recording, Herrera-Alvarado just sounded drugged and drunk. Cervantes knew that Herrera-Alvarado was nothing but a drug addict. A person under the influence of drugs and alcohol cannot be well nor think well. Also, in another recording, Jose said that he felt bad about getting Herrera-Alvarado as he has nothing to do with it (conspiracy).

**Note:** When Herrera-Alvarado's brother Jose was in front of the Judge. The judge gave him permission to speak. He said and beg the Judge that Herrera-Alvarado had nothing to do with what happened. That they should set him free from all the charges they had given him. Jose was the one to blame for drugs, not Herrera-Alvarado. Jose told the prosecutor that Herrera-Alvarado had nothing to do with drugs but the Prosecutor got mad at Jose. The Prosecutor advised the Judge that Jose was lying. Finally, they gave me and my brother for life in prison.

In this case, Herrera-Alavarado's sentence over-represents the seriousness of his criminal history or the likelihood that he will commit other crimes. Herrera-Alavarado's criminal history score was not properly calculated and Thering failed to argue accordingly.

Counsel's performance at sentencing was deficient resulting in prejudice to Herrera-Alavarado. Had Thering been prepared, properly argued objections to the PSR and argued for mitigation of his sentence, there is a reasonable that Herrera-Alavarado would have received a less harsh sentence.

## IV. Conclusion

In its conclusion to the GR, the government states that Herrera-Alvarado's motion should be dismissed. See Doc. 409 at 26. However, for the above and foregoing reasons, Herrera-Alvarado should be eligible for evidentiary hearing so that he may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

Respectfully submitted,

Dated: February 29, 2020.

_Pedro Alvarado_

PEDRO HERRERA-ALVARADO
REG. NO. 80000-379
USP BEAUMONT
U.S. PENITENTIARY
· P. O. BOX 26030
BEAUMONT, TX 77720
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2020, a true and correct copy of the above and Foregoing to United States' Memorandum in Opposition to § 2255 Motion was sent via U. S. Mail, postage prepaid, to Catherine Figueiras Pick, Assistant United States Attorney at United States Attorney's Office, 1000 Louisiana, Ste 2300, Houston, TX 77002.


_Pedro Alvarado_

PEDRO HERRERA-ALVARADO

FIRMLY TO SEAL



Origin: 77070
Destination:77002
Flat Rate
Feb 03, 20
XXQVJ172600144

$7.75

0006

**PRIORITY MAIL**
**FLAT RATE**
**POSTAGE REQUIRED**



**PRIORITY MAIL 1 – Day ®**

**EXPECTED DELIVERY DAY: 2/4/2020**

**USPS TRACKING® NUMBER**



9505 5168 6141 0034 0068 79

# PRIORITY
# MAIL

**FROM:**

United States Courts
Southern District of Texas
F I L E D
FEB 04 2020
David J. Bradley, Clerk of Court

MR. PEDRO HERRERA-ALVARADO
REG. NO. 80000-379
USP BEAUMONT
U.S. PENITENTIARY
P. O. BOX 26030
BEAUMONT, TX 77720

TO:

Mr. David J. Bradley
Clerk of Court
U. S. District Court
Southern District of Texas
Houston Division
515 Rusk Street
Houston, TX 77002-2600

- Date of delivery specified*
- USPS TRACKING™ included to many major
  international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs
  declaration label may be required.

* Domestic only

To schedule free
Package Pickup,
scan the QR code.





EP14F Oct 2018