eIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff-Respondent | § | |
| | § | |
| | § | |
| VS. | | CRIMINAL ACTION NO. 4:15-CR-44-3 |
| | | CIVIL ACTION NO. 4:19-CV-3617 |
| PEDRO HERRERA-ALVARADO | | |
| Defendant-Movant | | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Pedro Herrera-Alvarado's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 405). After reviewing Movant's § 2255 Motion, Memorandum in Support (Document No. 406), the Government's Answer (Document No. 409), and Movant's Response thereto (Document No. 410), the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Pedro Herrera-Alvarado's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 405) be DENIED.

I.      Factual Background and Procedural History

Movant Pedro Herrera-Alvarado ("Herrera-Alvarado"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Herrera-Alvarado's first attempt at § 2255 relief.

On April 16, 2016, Herrera-Alvarado and eight others, were charged in a 9-count Superceding Indictment. (Document No. 30). Counts 1, 3, and 5 charged Herrera-Alvarado with conspiracy to possess with intent to distribute a controlled substance. (Document No. 30). Counts 2 and 9 charged Herrera-Alvarado with possession with intent to distribute a controlled substance (Document No. 30). On May 13, 2016, Herrera-Alvarado pleaded guilty to Count 1 pursuant a written plea agreement. (Document No. 188). The plea agreement provided in pertinent part:

(2) The **statutory** maximum penalty for each violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A), **to include a mandatory minimum term of imprisonment of ten (10) years**, is imprisonment for life and fine of not more than ten (10) million dollars.

(8) The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentence Guidelines… Should the defendant's cooperation, if any, in the sole discretion of the United States, amount to substantial assistance, the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentence Guidelines Manual.

(10) Defendant knowingly and voluntarily waives the right to appeal or "collaterally attacks" the conviction and sentence, except that defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.

(11) In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

(13) The United States agrees to: move to dismiss any remaining counts of the Superseding Indictment pending against the defendant at the time of sentencing; move to dismiss the Indictment in Case No. H-15-047; recommend that the defendant receive a two (2) level downward adjustment pursuant to U.S.S.G Section 3E1.1(a) should the defendant accept responsibility as contemplated by the Sentencing Guidelines and if the defendant qualifies for an adjustment and the

offense level is 16 or greater, to move for a one (1) level reduction based on the timeliness of the plea which allowed the government to efficiently allocate its resources.

(15) Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements… Defendant nonetheless acknowledges and agrees that the Court has the authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty.

(16). Defendant represents to the Court that he/she is satisfied that his/her attorney has rendered effective assistance.

(17) Defendant is pleading guilty because he/she <u>is</u> guilty of the charges contained in Count One of the Indictment. (Document No. 188)(emphasis in original).

Additionally, Herrera-Alvarado signed a Plea Agreement Addendum, which states:

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manuel</u> which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms. (Document No. 188, p. 14-15).

During the Rearraignment, Herrera-Alvarado testified under oath that he received a translated copy of the indictment pending against him and discussed the charges and the case in general with his attorney. (Document No. 390, p. 5). He also testified that he was fully satisfied with the representation and advice provided by his counsel. (Document No. 390, p. 5). He further affirmed that he received a translated copy of the plea agreement, discussed the plea agreement with his attorney, and that he understood the terms of the agreement. (Document No. 390, p. 7). In addition, Herrera-Alvardo confirmed he was pleading guilty because he was guilty. (Document No. 390, p. 8). Finally, he testified that he understood that he was facing a penalty of not less than ten years imprisonment and up to *life* imprisonment. (Document No. 390, p. 9-10). Next, the Court explained the sentencing process and that his sentence may be more than what "Mr. Thering may have estimated you might receive." (Document No. 390, p. 12). Next, the Court went over the

elements of the offense. (Document No. 390, p. 15-17). Herrera-Alvarado also confirmed he was waiving his right to a direct appeal and collateral review as well as his rights to a jury trial. (Document No. 390, p. 13-15). Finally, the Government summarized what the government would have offered at trial to establish Herrera-Alvarado's guilt:

> Had the defendant proceeded to trial, the following facts, among others, would have been offered to establish his guilt:

> Sometime between on or about January 1st, 2005 continuing until on or about December 23rd, 2014 at or near Houston, Texas and in other locations all within the jurisdiction of this Court, the defendant Pedro Herrera-Alvarado, knowingly and intentionally conspired and agreed with several other people, to include Jose Herrera-Alvarado and others to possess with intent to distribute one kilogram or more of a mixture of substance containing a detectible amount of heroin, a Schedule 1 controlled substance.

> In order to accomplish the object of this offense the defendant engaged in a variety of activities, including but not limited to possessing and transporting heroin in the Houston, Texas area and/or helping others engage in that type of illegal activity.

> The amount of heroin the defendant was personally involved in regarding these activities was at least one kilogram, and the defendant also understood and expected this amount of heroin to be the object of the conspiracy.

> During the course of the conspiracy the defendant, along with his brother Jose Herrera-Alvarado, was a supplier of kilogram quantities of heroin in the Houston, Galveston and Dallas, Texas areas.

> The defendant supplied heroin to street level dealers who in turn would sell heroin to heroin users. Some of those individuals included co-defendants Henry Ortiz, Jr., Marinette Woods, Jagdeep Dhillon and Demetrio Paz Rodriguez. Co-defendants Aaron Raul Cervantes, Genaro Nunez and Jaime Telles-Santos worked for the defendant and Jose Herrera-Alvarado as drivers who delivered heroin.

> During the course of the conspiracy the defendant would also personally deliver heroin to street-level dealers or to heroin users. During the course of the conspiracy the defendant sold and delivered heroin between 3 to 6 grams to Ronny and Lynn Mayhall twice a week. The defendant charged $170 for three grams of heroin and $320 for six grams.

During the course of the conspiracy Aaron Raul Cervantes delivered one kilogram of heroin to the defendant so that the defendant could further distribute it to others.

In February, 2014 the defendant, along with Demetrio Paz Rodriguez, sold and delivered nine ounces of heroin to Arthur Smalls for $8,500.

The defendant was a member of the drug trafficking conspiracy responsible for all of these described heroin loads and also possessed each of the principal for purposes of distributing to others in the Houston and Galveston, Texas areas.

In addition to those transactions, when the defendant was arrested on December 23rd, 2014, agents discovered approximately three kilograms of heroin inside a residence he and Jose Herrera-Alvarado were using to store and cut heroin. (Document No. 390, p. 17-19).

In response, Herrera-Alvarado confirmed the accuracy of the summary and his role in the offense in the following exchange:

The Court: Mr. Herrera, can you tell me in your own words what it is you did to commit the crime you are pleading guilty to this morning?

The Defendant: I was intoxicated, I was drugged up, I was alcholoized. And I ask the Court to forgive me and forgive myself and others…

The Court: I am sorry?...

The Defendant: Well, because my brother and I sold drugs. We got involved and we –

The Court: It was heroin that you were selling?

The Defendant: Yes, madam.

The Court: Okay. (Document No. 390, p. 20).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared. (Document Nos. 304, 311). Herrera-Alvarado's base offense level was 36 based on Count 1 and the quantity of drugs attributed to him. He received a two-level upward adjustment for possession of a dangerous weapon (a firearm), and another two-level upward adjustment for witness intimidation. He also received a four-level upward adjustment because he was deemed

an organizer or leader of extensive criminal activity. With an adjusted offense level of 44, and a criminal history category of IV, Herrera-Alvarado's guideline range was life.

Herrera-Alvarado's attorney filed objections to the quantity of drugs attributed to him and to the enhancements. (Document No. 308). Counsel argued that the base offense level should be based on the one kilogram seized when Herrera-Alverado was arrested, which would have resulted in a base offense level of 36. With regards to the enhancements, counsel argued that Herrera-Alvarado was being wrongfully credited for his brother's actions. Counsel further argued that Herrera-Alvarado had not intimidated a witness or possessed a firearm. Based on this calculation, Herrera-Alvarado should have had an offense level of 26.

At the sentencing hearing on March 3, 2017, Herrera-Alvarado affirmed that he understood the PSR and that he had no additional objections to make to the PSR. He affirmed that all had been raised by his attorney. (Document No. 374, p. 3). Counsel argued that the recorded statements Herrera-Alvarado made to co-defendant Cervantes in the patrol car at the time of their arrest were unclear, and a reference to a movie, "what's up with this show" and not attempt to intimidate. (Document No. 374, p. 4) Counsel further argued that Herrera-Alvarado had not participated in events at Joe Corley. (Document No. 374, 5-6). Furthermore, counsel argued that the majority of the instances cited in support of the alleged quantity of drugs involved and Herrera-Alvarado's role as a leader of drug trafficking organization actually refer to Herrera-Alvarado's brother. He additionally argued that Herrera-Alvarado was primarily a substance abuser and incapable of operating as leader of the conspiracy. Simply put, counsel argued that Herrera-Alverado was the "lackey brother." Finally, counsel argued that there was no physical evidence that Herrera-Alvarado carried a firearm during the alleged timeframe of the conspiracy and that the witnesses accounts of Herrera-Alvarado having a firearm were not

credible. (Document No. 374, p. 10-14, 20-21).  Counsel also argued for a variance/downward departure. (Document No. 374, p. 23-24).  The Court, unpersuaded by these arguments, imposed a prison sentence of life. The Court stated:

> Pedro Herrera-Alvarado stands before the Court for sentencing after entering a plea of guilty to Count 1, conspiracy to possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectible amount of heroin, a Schedule 1 controlled substance.
>
> Mr. Herrera was involved in the purchase and distribution of heroin, firearms, and other drugs, from at least 2000 until 2014.  He recruited and/or directed the actions of others to facilitate the day-to-day operations of the drug trafficking organization, and is deemed to be an organizer or leader of criminal activity that involved five or more participants, including Jose Herra-Alvarado, Genero Nunez, Jaime Telles-Santos, Demetrio Rodriguez, Henry Ortiz, Jr., Marinette Woods, and Jagdeep Dhillon.
>
> Pedro Herrera-Alvarado is held accountable for possessing a handgun while conducting drug transactions, as well as other firearms possessed by co-defendants under the tenets of relevant conduct.
>
> Mr. Herrera-Alvarado is identified as being accountable for the drugs seized on April 2, 2014, 2018 grams of heroin, 251 grams of methamphetamine, 200 grams of cocaine, 54.15 grams of marijuana.
>
> April 16, 2014, 285 grams of heroin.  August 7, 2014, 266.2 grams of heroin.  And December 23rd, 2014, 3,236 grams of heroin, as well as the drug transactions that were identified to be Title III intercepts, direct surveillance, and the interviews of other co-conspirators, 31,026 grams of heroin.
>
> The assessment that at least 31,026 grams of heroin was distributed by the drug trafficking organization, in addition to the drugs recovered by agents comports with the admission by Aaron Cervantes that he received a kilogram of heroin at the stash house every two weeks while working for the drug trafficking organization in late 2014, and with the bulk quantities of heroin actually recovered by agents in this investigation.
>
> Because the expense involved more than one drug type, various substances are converted to marijuana—to marijuana equivalent for guideline calculation purposes in accordance with the United States Sentencing Guidelines, Section 2D1.1, comment note 8(b).As such, Pedro Herrera-Alvarado hereby is held accountable for a total of 37,088.25 kilograms of marijuana equivalent.
>
> Additionally, Pedro Herrera-Alvarado is considered to have obstructed justice as envisioned under United States Sentencing Guidelines, Section

2D1.1(b)(15)(D), and United States Sentencing Guidelines, Section 3C1.1 by instructing Aaron Cervantes to accept full responsibility for the drugs seized on April 23, 2014, and intimidating Cervantes with the threat of reprisal following their arrest on December 23, 2014.

However, the Court has granted the government's agreement concession that that will not be --- obstruction of justice will not be counted as prohibitive to acceptance of responsibility.

For the reasons cited above, a sentence of life imprisonment to the Bureau of Prisons takes into account the defendant's conduct of the instant offense and appropriately sanctions illegal activities, his sentence is adequate and meets the objectives of the United States Code, Section 3553(a), which instructs the Court to impose a sentence sufficient, but not greater than necessary, when considering the nature and circumstances of the offense and the history and characteristics of the defendant. (Document No. 374, p. 26-29).

On March 10, 2017, Herrera-Alvarado filed a Notice of Appeal; however, the Court of Appeals dismissed the appeal based on Herrera-Alvarado's waiver of his right to appeal pursuant the plea agreement. (Document No. 400, 401). On September 12, Herrera-Alvarado filed the instant § 2255 motion, claiming ineffective assistance of counsel.

II.     Standard of Review

Motions pursuant to 28 U.S.C § 2255 may only provide "relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is subject to collateral attack*." United States v. Seyfert,* 67 F.3d 544, 546 (5th Cir. 1999) (citing *United States v. Faubion,* 19 F.3d 226, 232 (5th Cir. 1994)).

A § 2255 motion can be resolved without an evidentiary hearing when the record conclusively shows that no relief is appropriate. Moreover, a petitioner is entitled to evidentiary hearing if he makes factual allegations that would entitle him to relief; however, he is not entitled

to an evidentiary hearing when those allegations are merely conclusory or contradicted by the record. *Powers v. United States,* 446 F.2d 22, 24 (5th Cir. 1971).

III.    Discussion

Claims of ineffective assistance of counsel are analyzed pursuant the two-prong test posited in *Strickland v. Washington*. *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first prong, the movant must demonstrate that his counsel's performance fell below an objective standard of reasonableness. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004). Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) ("We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices"). *See Harrington,* 131 S.Ct. at 789 (recognizing that counsel's performance is not deficient when it can be shown that counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies). Thus, judicial scrutiny of counsel's performance is "highly deferential" with "a strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064–65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Under the second prong, the petitioner must show that counsel's deficient performance prejudiced him in such a way that the proceeding was unreliable or fundamentally unfair. *Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment"). Moreover, in the context of the pleading process, the movant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *United States v. Thompson,* 44 F.3d 1004 (5th Cir. 1995). In determining whether a defendant would have gone to trial, the court should consider "the risks [he] would have faced at trial," "his 'representations about his desire to retract his plea,'" and "the district court's admonishments." *United States v. Valdez,* 973 F.3d 396, 403 (5th Cir. 2020)

A petitioner must establish both the deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

## A. Herrera-Alvarado's claims that counsel's performance was objectively deficient for allegedly failing to inform him of the likely consequences of pleading guilty are without merit.

Herrera-Alvarado's claims regarding counsel's alleged ineffectiveness in handling his case and misrepresentation of the likely consequences of pleading guilty are without merit because they are contradicted by the contemporaneous record.

A plea of guilty is only valid if the defendant enters it knowingly and voluntarily. *Bradbury v. Wainwright,* 658 F.2d 1083, 1086 (5th Cir. 1981). For a guilty plea to be knowing and voluntary, the defendant must be made reasonably aware of the relevant circumstances and likely consequences of pleading guilty. *Id.* Defense counsel has a duty to ascertain whether the defendant has entered the guilty plea knowingly and voluntarily. *Id.* at 1087. *See Chamberlain v. Quarterman,* 239 F. App'x 21, 25 (5th Cir. 2007) ("[T]he failure of defense counsel to inform the defendant about a plea bargain amounts to ineffective assistance of counsel"). However, counsel does not render deficient performance when he has accurately informed the defendant of the

maximum sentence he may receive, but the defendant persists in holding a subjective understanding that he will receive a lesser sentence. *Brown v. Kelly,* 393 F. App'x 208, 213 (5th Cir. 2010). *See United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) ("Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*"). *See also Chamberlain,* 239 F. App'x at 25 (holding that defense counsel's prediction that defendant could receive parole did not constitute deficient performance because counsel also informed the defendant that the decision to grant parole was ultimately in the discretion of the Board of Pardon and Paroles).

Additionally, a movant's allegations regarding his counsel's deficient performance are given considerably less weight when they are contradicted by the defendant's own sworn testimony. *United States v. Smith,* 945 F.3d 860, 863–64 (5th Cir. 2019) There is a strong presumption that a defendant's solemn statements in court are true. *United States v. Thompson*, 44 F.3d 1004 (5th Cir. 1995). To overcome this presumption, the petitioner must make specific factual allegations that are corroborated—typically through an affidavit—by a reliable third person. *Davis v. Butler,* 825 F.2d 892 (5th Cir. 1987). With regards to allegations of misrepresentation by counsel, a petitioner only satisfies the specificity requirement if he provides (1) the exact terms of the alleged promise; (2) exactly how, when, and where the promise occurred; (3) and the precise identity of an eyewitness. *Id. See Brown*, 393 F. App'x at 212 (holding that uncorroborated claims are insufficient to show that a guilty plea was involuntary).

In the present action, Herrera-Alvarado claims that counsel failed to communicate with him about his case or inform him of the possibility that he could face life imprisonment even after pleading guilty. He specifically asserts that counselonly met with him twice, never answered his or his family's calls, and was only concerned about getting paid. He claims that

counsel convinced him that he would receive no more than ten years imprisonment. (Document No. 406, p. 15-16).  Each of these assertions, however, are contradicted by Herrera-Alvarado's own sworn testimony at the Rearraignment and signed written Plea Agreement. The contemporaneous record summarized above shows that Herrera-Alvarado affirmed that he had discussed his case and the plea agreement with his attorney, that he understood the terms of the plea agreement and the possibility that could receive *life* imprisonment, and that he was fully satisfied with his attorney's representation.  Herrera-Alvarado's vague and largely conclusory allegations that he would not have pleaded guilty but for counsel's promise/assurance of a ten year sentence are undermined by the contemporaneous record. *See Lee v. United States*, 137 S.Ct. 1958, 1967 (2017)("Courts should not upset a plea solely because of *post hot* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expresses preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017)(explaining that "self-serving *post hoc* assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

Moreover, even if his attorney only infrequently communicated with him, those facts alone cannot sustain an ineffective assistance of counsel claim. The Fifth Circuit Court of Appeals has held that the brevity or infrequency of a counsel's meetings with his client, alone, cannot support a claim of ineffective assistance of counsel. *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984). *See Hall v. Whitley,* 998 F.2d 1014 (5th Cir. 1993) (recognizing that effective assistance may be rendered in merely twenty or thirty minutes). Herrera-Alvarado's claims fail as a matter of law.

**B. Herrera-Alvarado cannot demonstrate that his attorney performed deficiently under *Strickland* by failing to file pretrial motions.**

Herrera-Alvarado claims that his counsel was ineffective for failing to file motions, "such as Motion for Discovery; Request for Rule 404(b) of the Federal Rules of Evidence [Material]; Motion for *Brady/Giglio* Material; and for Equal Access for Purposes of Interview; and a Motion to Suppress Evidence or Exhibits." (Document No. 406, p. 17).   Herrera-Alvarado claims there was "no physical evidence presented in court, except for the government's narration of events and testimonies from cooperating witnesses, which were in [his] PSR offense conduct."  (Document No. 406, p. 17).   Other than his conclusory assertion that "such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case and would have aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial" (Document No. 406, p. 18), Herrera-Alvarado fails to articulate any specific reason as to *why* these motions should have been filed, let alone give any indication as to whether the court would have granted them. Such conclusory allegations, alone, cannot sustain an ineffective assistance of counsel claim. *See Miller v.* Johnson, 200 F.3d 274, 282 (5th Cir. 2000)(holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v.* Johnson, 160 F.3d 1029, 1041 (5th Cir. 1998)("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").   The Fifth Circuit Court of Appeals has held that an attorney's decision on whether to file pretrial motions falls within the ambit of trial strategy. *Murray,* 736 F.2d at 281. "Counsel is not required to engage in the filing of futile motions." *Id.* at 283.   Thus, Herrera-Alvarado cannot demonstrate that his counsel was deficient under *Strickland* for failing to file pretrial motions.

C. **Herrera-Alvarado cannot demonstrate that his attorney's failure to conduct an independent investigation constituted deficient performance under *Strickland*.**

Counsel is required to make a reasonable investigation or a reasonable decision that an investigation is unnecessary. *Strickland*, 466 U.S. at 690-691 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). To demonstrate that counsel's decision not to investigate was unreasonable under *Strickland*, the movant must allege with specificity what information would be uncovered by the additional investigation. *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989). *See Gray v. Lucas,* 677 F.2d 1086, 1091 (5th Cir. 1982) (holding that counsel was not ineffective for failing to investigate when the defendant had not identified the witnesses his counsel should have interviewed or what further investigation he should have taken). Additionally, the need for further investigation may be greatly diminished or completely eliminated when defense counsel is already generally aware of the facts that support a potential line of defense. *Strickland,* 466 U.S. at 691.

In the present action, Alvarado contends that his counsel rendered constitutionally ineffective assistance by failing to " conduct any kind of a reasonable pretrial investigation of this case. [Counsel] failed to research the case law, interview witnesses or investigate the facts…." (Document No. 406, p. 19). According to Herrera-Alvarado, "[counsel] pushed [him] to plead guilty to an offense he knew nothing about." (Document No. 406, p. 20). In support of his claim, Herrera-Alvarado points to what he purports to be his Rearraignment but in fact is that of his brother. Furthermore, he identifies no specific witness his attorney should have spoken with. He also provides no indication of what additional evidence his attorney could have and should have investigated. Most importantly, Herrera-Alvarado provides no concrete explanation of how his attorney's knowledge of the facts of his case was allegedly deficient. To the contrary,

the contemporaneous record clearly demonstrates counsel's familiarity with the facts as shown in the written objections to the PSR and counsel's arguments at Sentencing. Most of the factual allegations now relied on by Herrera-Alvarado to support his ineffectiveness claims were raised by counsel. For example, counsel argued that Herrera-Alvarado was a substance abuser and was often confused with his brother, and that the drug trafficking activities were those of his brother. Because Herrera-Alvarado provides no indication of how further investigation or factual revelations would have been advantageous to him, and how it would have resulted in a different outcome, his ineffective assistance of counsel claim fails as a matter of law.

**D. Herrera-Alvarado's attorney did not perform deficiently in his negotiation of Herrera-Alvarado's plea agreement.**

As illustrated in *Premo v. Moore*, Defense counsel does not render objectively deficient performance when advises his client to accept a plea agreement that he reasonably believes could be beneficial. *Premo v. Moore,* 562 U.S. 115, 126 (2011). In that case, defense counsel advised the defendant to plead guilty to a charge of felony murder before he had filled a meritorious motion to suppress one of the defendant's confessions. *Id*. at 119. The court noted that the swift acceptance of the plea agreement afforded the defendant with several potential benefits. *Id*. at 126. These benefits included the termination of the potentially damaging ongoing investigation and the reduced possibility that the defendant would receive life in prison. *Id*. The court further noted that the defendant faced highly uncertain prospects of success if he had proceeded to trial. *Id*. at 127. As such, the court concluded that defense counsel made a risky but ultimately reasonable strategic choice in recommending swift acceptance of the plea agreement. *Id*. *See Brown*, 393 F. App'x at 213-214 (holding that counsel did not render deficient performance by recommending defendant plea guilty instead of proceeding to trial even though guilty plea could have resulted in same life sentence and the defendant had "nothing to lose" by going to trial).

In the present action, Herrera-Alvarado claims that his counsel rendered deficient performance in negotiating the plea agreement because the agreement "was a dummy plea that could still leave [him] with a life sentence." (Document No. 406, p. 16). However, like the defense counsel in *Premo*, Herrera-Alvarado's attorney had substantial reason to believe that his client could benefit from accepting the plea agreement. For example, Herrera-Alvarado received the benefit of the government dismissing the remaining charges pending against him under the Indictment, the dismissal of the Indictment in Case No. H-15-047, and of potentially receiving a downward departure by providing substantial assistance. (Document No. 30). The government also agreed to recommend that Herrera-Alvarado receive a two-level downward adjustment pursuant to U.S.S.G Section 3E1.1(a). (Document No. 30). Additionally, the evidence of guilt was strong. There were Title III wire intercepts of Herrera-Alvarado, corroborating testimony from multiple witnesses, and the seizure of physical evidence at the time of the arrest. Finally, as demonstrated in *Brown*, the mere risk that a defendant could receive the same sentence after pleading guilty as opposed to going to trial does not indicate that defense counsel performed deficiently. Thus, Herrera-Alvarado's attorney made a reasonable strategic decision in advising acceptance of the plea agreement.

### E. Herrera-Alvarado has not shown that he was prejudiced by counsel's alleged failures at sentencing

Herrera-Alvarado contends that his attorney rendered ineffective assistance of counsel by failing to review, discuss, or explain the PSR. He specifically asserts that his attorney "did not properly review, discuss and explain the PSR adequately … prior to sentencing" and that counsel "failed to properly argue objections as not familiar with case." (Document No. 406, p. 35-36). As discussed above, Herrera-Alvardo's allegations are undermined by his sworn testimony at Sentencing that he had gone over the PSR,

understood the PSR, and had no other objections beyond those made by counsel. (Document No. 374, p. 2-3). Defense counsel's performance in arguing objections cannot be deemed objectively deficient merely because his arguments failed to persuade the court to sustain his objections. *Youngblood v. Maggie*, 696 F.2d 407, 410 (5th Cir. 1983). Rather, counsel's arguments are only objectively deficient when he has failed to make clearly meritorious arguments which he should have been aware of at the time. *Green v. Johnson,* 160 F.3d 1029, 1037 (5th Cir.1998). To demonstrate that defense counsel inadequately argued objections to the PSR, the defendant must come forward with arguments that are sufficiently supported by evidence showing that the facts contained within the PSR are untrue. *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (recognizing that mere conclusory denials of facts contained in the PSR are insufficient to show that those facts are untrue, and that defense counsel failed to raise meritorious arguments). Nearly every objection, argument, and supporting factual allegation that Herrera-Alvarado claims should have been made were made by counsel. The only objection that counsel did not raise—and that is now brought by Herrera-Alvarado—is that Herrera-Alvarado's criminal history was improperly calculated; however, Herrera-Alvarado provides no indication of which aspects of his criminal history were incorrectly attributed to him, much less how this would have changed his guideline sentencing range. He also provides no evidence supporting this contention. As for Herrera-Alvardo's claim that counsel was ineffective for failing to argue for a variance or downward departure, again his claim is undermined by the contemporaneous record, which shows that counsel argued for a variance/downward departure. For example, counsel pointed to Herrera-Alvarado's drug history, that he had attempted to

assist the government and had been compliant at Joe Corley. Counsel noted that a co-defendant had been sentenced to 130 months imprisonment. Counsel argued for the low end of guidelines or 360 months. (Document No. 374, p. 23-24). This ineffectiveness claim fails.

IV.     Conclusion and Recommendation

Based on the foregoing, it is RECOMMENDED that Movant Pedro Herrera-Alvarado's § 2255 Motion (Document No. 405) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80–5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), cert. denied, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this _____day of September 10, 2021 _____, 2021.

_Frances H. Stacy_

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE